IN THE COURT OF APPEALS
AT KNOXVILLE

FILED

**September 30, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

MARGIE E. SPARKS,                )    KNOX CIRCUIT
                                 )    C.A. NO. 03A01-9803-CV-00092
                                 )
          Plaintiff-Appellant    )
                                 )
                                 )
vs.                              )
                                 )    HON. DALE C. WORKMAN
                                 )    JUDGE
                                 )
                                 )
KNOXVILLE UTILITIES BOARD,       )
                                 )
          Defendant-Appellee     )    AFFIRMED AND REMANDED

BARBARA W. CLARK, Moore & Clark, P.C., Knoxville, for Appellant.

T. KENAN SMITH, Hodges, Doughty & Carson, Knoxville, for Appellee.

O P I N I O N

McMurray, J.

     This case arose from an accident wherein the plaintiff, Margie

E. Sparks, fell when she stepped on a water meter cover located on

the property of Kelsey and Cynthia Finch and allegedly controlled

and maintained by the defendant, Knoxville Utilities Board (KUB).[1]

---

[1]The plaintiff's complaint against the defendants Finch was dismissed by
the trial court, which ruling was not appealed by the plaintiff.

After a bench trial, the court found that the plaintiff had failed to prove KUB guilty of any negligence and dismissed her action. This appeal resulted. We affirm the judgment of the trial court.

The issue before us, as framed by the plaintiff, is whether she "proved by a preponderance of the evidence that the grass, roots and dirt accumulated around and within the meter well, causing the lid to become loosen[ed], thereby resulting in her falling into the well." Our review is de novo, accompanied by a presumption of correctness of the trial court's findings of fact, unless the evidence preponderates otherwise. Rule 13(d), Tennessee Rules of Appellate Procedure.

The plaintiff testified that she was mowing the lawn and when she stepped on the meter cover, it flipped and she fell into the meter well. When asked whether anything was wrong with the cover, plaintiff responded as follows:

> A:   I can't tell you what is wrong with the lid other than it flipped and I fell in it. I am not an expert to tell you what is wrong with the lid. I can tell you the lid didn't fit.
>
> Q:   Is there anything wrong with the well itself? Can you tell me anything wrong, any defect, any crack, any--
>
> A:   Sir, I am not an expert with that lid or the meter or the well itself. I didn't even know it was called a well until you said so.
>
> Q:   But you don't have any testimony that you can offer to this Judge today that there was a crack, a defect, or a break at all in that lid or the well?

A: No, I can't say it was a crack or anything. I didn't examine the well, whatever you call it. All I am saying is that it flipped and I went in it and it didn't fit when we tried to put it back.

The plaintiff's legal theory in this premises liability case is that KUB was negligent in allowing weeds, grass and roots to grow and accumulate under the meter cover, thereby causing it to dislodge and become unstable and dangerous to those who might step on it. In order to establish negligence, a plaintiff must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause. McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 894 (Tenn. 1996), McCall v. Wilder, 913 S.W.2d 150, 153 (Tenn.1995).

In a premises liability case such as this one, the plaintiff must prove, among other things, that he or she was injured by a dangerous or defective condition on the defendant's property. Cf. Hardesty v. Service Merchandise Co., Inc., 953 S.W.2d 678, 682 (Tenn.App. 1997) ("In order to prevail against the owner or operator of a premises for negligence in allowing a dangerous or defective condition to exist on the premises, the plaintiff must establish (1) that the defendant created the condition or (2) that the defendant had actual or constructive notice of the condition prior to plaintiff's injury.")

3

The accident occurred on October 21, 1995. The plaintiff presented the testimony of Randall Skeen, KUB's construction foreman, who responded to the service call regarding the meter after the accident. Skeen stated that he examined the meter cover and well shortly after the accident and found everything "okay" with no noticeable defects in either. He testified that he did remove some grass and roots underneath the cover, but that they did not in any way impede the cover from sitting firmly and securely on the well. Skeen testified that KUB was responsible for the maintenance of meter wells.

The plaintiff also presented the testimony of James Sheets, an investigator with Appalachian Claims Service. Sheets conducted an investigation of the accident for KUB on October 23, 1995, two days after the accident. Sheets testified that he examined the meter well and cover, and took eight photographs of the area. He stated that nothing had been done to the meter prior to his taking the photographs. These photographs are included in the record before us. Sheets testified that some grass had grown up between the cover and the well, but that the grass did not in any way affect the stability of the cover and how it sat on the well. Sheets stated that the cover sat "squarely and firmly" on the well.

4

The plaintiff also presented the testimony of Samuel Thomas, Jr., the owner of a lawn care and landscaping business. The court qualified Thomas as an expert in the field of lawn care. Thomas examined the accident site in October of 1997, some two years after the accident. He testified that he "just observed the type of grass that was there surrounding or around the meter base itself" and that it was mainly Johnson grass. Thomas testified as follows regarding the characteristics of Johnson grass:

> A:   And it has a matty — it tends to mat, like clumps, and it will move, it will move — there is a possibility that it could — I don't know if I should say this — it can raise this — it gets under things and it pushes it up. The mattiness of it is very strong and very tough, so it has a tendency to move things out of its way.
>
> Q:   So it can grow up and push the lid up?
>
> A:   It can grow up and push the lid up, yes.
>
> Q:   Are these virgin roots, this Johnson grass, is it virgin?
>
> A:   Oh, no. No. They have been there for quite some time.[2]
>
> Q:   When you say quite some time, based on your expertise, how long, in your opinion, will this condition exist with the roots and —
>
> A:   I would say at least approximately two years, 18 months to two years.

Thomas testified on cross-examination as follows regarding his observation of the accident scene:

> Q:   Now, in regard to the lid itself, you did not lift it up on either occasion?

---

[2]In this testimony, Thomas is referring to the roots apparent in one of the photographs taken by Sheets two days after the accident.

A:    No, sir, I did not.

Q:    You did not examine the lid and you did not
      examine the well itself?

A:    No, I did not.

Q:    You can't identify any type of defect
      whatsoever in the well or the lid?

A:    No, I did not do any physical approaches at all on
      the lid.

We are of the opinion that Thomas's testimony is not sufficient to shed any light on the probable cause or cause-in-fact of this accident. His investigation, two years after the accident, bears very little relevance on the question of whether the meter cover and well were in a defective or dangerous condition at the time of the accident. Regarding the existence of grass growing between the cover and well, Thomas did not testify that the grass was in any way causally related to the stability, or lack thereof, of the meter cover.

KUB did not present any evidence to the trial court. KUB did attempt to impeach the credibility of the plaintiff, and argued that the plaintiff's injury did not come from stepping on the meter cover, but from some other cause. It is thus apparent from the record that credibility was an important factor in deciding this case. Although the trial court did not make specific findings regarding credibility, it clearly placed more weight upon the testimony that the lid was not affected by the grass and that

it sat securely on the well, than the plaintiff's testimony. "Where the issue for decision depends upon the determination of credibility of witnesses, the trial court is the best judge of credibility, and its findings will be given great weight." Gotwald v. Gotwald, 768 S.W.2d 689, 697 (Tenn. App. 1988). "On an issue which hinges on witness credibility, [the trial court] will not be reversed unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." Tennessee Valley Kaolin v. Perry, 526 S.W.2d 488, 490 (Tenn. App. 1974).

Given our deference to the trial court's credibility determinations and the lack of evidence regarding the issues of probable cause and whether the meter was defective or dangerous, we feel the evidence does not preponderate against the judgment of the trial court. The court's decision is affirmed in its entirety and the case remanded. Costs on appeal are assessed to the appellant.

_____
Don T. McMurray, Judge

CONCUR:


_____
Houston M. Goddard, Presiding Judge

7

_____
Herschel P. Franks, Judge

IN THE COURT OF APPEALS
AT KNOXVILLE

| | | |
|---|---|---|
| MARGIE E. SPARKS, | ) | KNOX CIRCUIT |
| | ) | C.A. NO. 03A01-9803-CV-00092 |
| | ) | |
| Plaintiff-Appellant | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | HON. DALE C. WORKMAN |
| | ) | JUDGE |
| | ) | |
| | ) | |
| KNOXVILLE UTILITIES BOARD, | ) | |
| | ) | |
| Defendant-Appellee | ) | AFFIRMED AND REMANDED |

**<u>JUDGMENT</u>**

This appeal came on to be heard upon the record from the Circuit Court of Knox County, briefs and argument of counsel. Upon consideration thereof, this Court is of the opinion that there was no reversible error in the trial court.

The court's decision is affirmed in its entirety and the case remanded. Costs on appeal are assessed to the appellant.

PER CURIAM